UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION
AT COVINGTON

CIVIL ACTION NO. 20-152-DLB-CJS

CHRISTOPHER ROLLINS                                                                                               PLAINTIFF

v.                           **MEMORANDUM OPINION AND ORDER**

LOWE'S HOME CENTERS, LLC                                                                                  DEFENDANT

\* \* \* \* \* \* \* \* \* \* \*

I.  **INTRODUCTION**

This matter is before the Court upon a Motion for Summary Judgment (Doc. # 28) and two evidentiary motions filed by Defendant (Docs. # 35 and 46). All pending motions have been fully briefed (Docs. # 32, 36, 37, 41, 47, and 48) and are ripe for the Court's review. For the reasons stated herein, Defendant's Motion for Summary Judgment (Doc. # 28) is **denied**, Defendant's Motion to Limit the Testimony of Dr. Jonathan Slaughter (Doc. # 35) is **denied without prejudice**, and Defendant's Motion to Exclude the Testimony of Dr. Michael Nicoson (Doc. # 46) is **denied without prejudice.**

II.  **FACTUAL AND PROCEDURAL BACKGROUND**

The facts of this case are simple. In March 2020, Plaintiff Christopher Rollins was shopping at a Lowe's store in Highland Heights, Kentucky. (Doc. # 1-1 ¶ 4). Mr. Rollins has multiple sclerosis, which requires him to use a cane on some days, but not on others. (Doc. # 32 at 2). During his March 2020 visit to Lowe's, Mr. Rollins browsed various items in the store, and eventually settled on a box of flooring for his condo. (*Id*.). The long and narrow box of flooring was stacked on a shelf with other boxes of flooring, and Mr. Rollins

1

placed his cane into his shopping cart to grab one of the boxes for purchase. (Doc. # 28-1 at 4). But after Mr. Rollins started to move the box, he realized that the box was too heavy for him to lift. (Doc. # 32 at 2). Mr. Rollins then lost his balance, and in an attempt to either regain his balance or catch himself before falling, Mr. Rollins grabbed the shelf on which the flooring boxes were stacked. (*Id.*).

On the shelf that Mr. Rollins grabbed was a screw. (Doc. # 1-1 ¶ 5). According to Mr. Rollins, the screw was lodged in the shelf in such a way that it was "protruding" from the shelf's surface (*id.* ¶ 5; Doc. # 32 at 3), but according to Lowe's, the screw was merely "resting on the shelf without any sharp edges or points protruding from the display." (Doc. # 28-1 at 11). Irrespective of the screw's resting position, it pierced Mr. Rollins' hand upon impact. (Doc. # 1-1 ¶ 7). After the injury, Mr. Rollins attests that the screw fell out of his hand (Doc. # 32 at 3), but Lowe's states that the screw remained in Mr. Rollins' hand until EMS removed it and discarded it. (Doc. # 28-1 at 4).

Mr. Rollins sustained injuries from the incident and filed this suit in Campbell Circuit Court in August 2020 seeking damages against Lowe's on a theory of premises liability. (Doc. # 1-1). Lowe's removed the case to this Court in October 2020, invoking the Court's diversity jurisdiction under 28 U.S.C. § 1332. (Doc. # 1). Discovery has proceeded since then, and Lowe's has now moved for summary judgment (Doc. # 28), in addition to moving to exclude or limit two of Mr. Rollins' expert witnesses (Docs. # 35 and 46).

## III.  ANALYSIS

### A.  Motion for Summary Judgment (Doc. # 28)

#### 1.  *Standard of Review*

A motion for summary judgment should be granted when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute as to a material fact exists where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Thus, no genuine dispute of material fact exists where no reasonable jury could return a verdict for the nonmoving party. *See Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 349 (6th Cir. 1998). The moving party bears the burden of showing the absence of a genuine issue of material fact. *Sigler v. Am. Honda Motor Co.*, 532 F.3d 469, 483 (6th Cir. 2008). After that burden is met, to avoid the entry of summary judgment, the non-moving party must produce "specific facts" showing a "genuine issue" necessitating the matter moving forward to trial. *Celotex Corp v. Catrett*, 477 U.S. 317, 324 (1986). However, where applicable, the non-moving party's rebuttal burden is light, as the Court must draw all reasonable inferences in favor of the non-moving party. *Matsushita Elec. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

The Court's function at the summary judgment stage is limited to determining whether sufficient evidence exists to make a factual issue a proper question for a jury. *Anderson*, 477 U.S. at 250. In making that determination, the Court does not weigh evidence or determine the truth of matters asserted. *Id.* at 249. Nor does the Court search the record "to establish that it is bereft of a genuine issue of material fact," *Street*

*v. J.C. Bradford & Co.*, 886 F.2d 1472, 1480 (6th Cir. 1989), as the law is clear that "the non-moving party must cite specific portions of the record" to defeat a summary judgment motion. *U.S. Structures, Inc. v. J.P. Structure, Inc.*, 130 F.3d 1185, 1191 (6th Cir. 1997). Accordingly, "the inquiry performed is the threshold inquiry of determining whether there is a need for trial – whether, in other words, there are any genuine factual issues that properly can be resolved only be a finder of fact because they may reasonably be resolved in favor of either party." *Anderson*, 477 U.S. at 250. Lastly, a "fact is 'material' for purposes of summary judgment if proof of that fact would establish or refute an essential element of the cause of action or defense." *Bruederle v. Louisville Metro Gov't*, 687 F.3d 771, 776 (6th Cir. 2012).

    **2.**    **Applicable Law**

A successful negligence action under Kentucky law requires the existence of (1) a duty owed from the defendant to the plaintiff, (2) a breach of that duty, (3) injury to the plaintiff, and (4) causation between the breach and the injury. *E.g.*, *Pathways, Inc. v. Hammons*, 113 S.W.3d 85, 88 (Ky. 2003). Typically, duty is a question of law, breach and injury are questions of fact, and causation can be either or both. *Id.* at 89. But in premises liability actions brought by business invitees, Kentucky uses a burden-shifting framework by which a plaintiff "creates a rebuttable presumption to avoid a summary judgment or directed verdict, and 'shifts the burden of proving the absence of negligence'" to the defendant at trial. *Martin v. Mekanhart Corp.*, 113 S.W.3d 95, 98 (Ky. 2003) (quoting *Lanier v. Wal-Mart Stores, Inc.*, 99 S.W.3d 431, 437 (Ky. 2003)).

But nonetheless, Kentucky's burden shifting framework does not "abrogate the requirement of negligence on the part of the business itself," and the core elements of

4

negligence remain intact. *Lanier*, 99 S.W.3d at 437 (internal quotations omitted). Rather, the burden shifting framework merely allows the plaintiff to create a rebuttable presumption which is applicable to the unique circumstances surrounding business invitees and premises liability. To create that rebuttable presumption, a plaintiff must show that:

> (1)  He or she had an encounter with a foreign substance or other dangerous condition on the business premises;
> (2)  The encounter was a substantial factor in causing the accident and the customer's injuries; and
> (3)  By reason of the presence of the substance or condition, the business premises were not in a reasonably safe condition for the use of business invitees.

*Martin*, 113 S.W.3d at 98 (citing *Lanier*, 99 S.W.3d at 435-36).

However, uncertainty exists within Kentucky law as to whether the *Lanier* burden shifting framework extends beyond slip-and-fall cases. That uncertainty seems evident in this case, as Mr. Rollins has cited the framework extensively, and Lowe's seems to have ignored it entirely. (*Compare* Doc. # 28-1 *with* Doc. # 32). The Sixth Circuit recently summarized that uncertainty in a case involving falling merchandise, also filed against Lowe's in this judicial district, in which the court noted that Kentucky courts have differed as to whether *Lanier* applies to premises liability cases beyond slips-and-falls. *Littleton v. Lowe's Home Ctrs., LLC*, __ F. App'x __, No. 21-5033, 2021 WL 4058004, at *2-3 (6th Cir. Sept. 7, 2021) (collecting cases); *see also Cornelison v. Speedway LLC*, No. 6:20-CV-207-REW-HAI, 2023 WL 1452051, at *2 (E.D. Ky. Feb. 1, 2023) (referencing "the fulsome history of premises liability law in Kentucky" but applying *Lanier* to a case involving a trip over a curb). This case is not a slip-and-fall case, but it is nonetheless a premises liability case. Rather, this case is a "fall-into-something" case, as Mr. Rollins'

fall itself was not caused by any act or omission by Lowe's, but the injury he sustained nonetheless may have been, as he fell into a screw on a shelf. Unfortunately for the Court, little precedent exists on "fall-into-something" cases, but the Court nonetheless concludes that the *Lanier* framework applies here.

First, while the Kentucky Supreme Court in *Lanier* identified the question at hand as "consider[ing] the allocation of the burden of proof in so-called 'slip-and-fall' cases brought by business invitees who have been injured as a result of slipping on a foreign substance," 99 S.W.3d at 432, case law from the 20 years since *Lanier* has focused more on the business/invitee relationship as opposed to the nature of the accident. For example, in *Martin*, the Kentucky Supreme Court eschewed the slip-and-fall centric language in favor of describing *Lanier* as "a burden shifting approach to premises liability cases involving injuries to business invitees." 113 S.W.3d at 98. More recently, in *Brewster v. Colgate-Palmolive Co.*, the Kentucky Supreme Court held that "we explicitly limit *Lanier* to cases involving customers or clients or patron suffering 'slips and falls' *or other injuries resulting from dangerous conditions on a business owner's premises*." 279 S.W.3d 142, 150 (emphasis added). The continuing analysis in *Brewster* discusses the rights of independent contractors versus those of customers, further underscoring that the critical distinction is the class of plaintiff, not the nature of the accident. Here, the Court accordingly reasons that Mr. Rollins, a customer of Lowe's and a business invitee, is within the class of plaintiffs contemplated by *Lanier*, even if his injuries were not sustained in a traditional slip-and-fall accident.

Second, even though some courts have distinguished *Lanier* based on the nature of the accident instead of on the class of plaintiff, the courts which have done so discuss

6

*Lanier* in a manner that would lend its application to the facts of this case. The Western District of Kentucky's explanation in *Neville v. Wal-Mart Stores East, L.P.* is instructive, in which the court explained why *Lanier* does not apply in a falling merchandise case:

> A slip and fall results from a static and readily identifiable dangerous condition (i.e. a spilled substance), [while] a falling merchandise injury results from a dynamic event (here a falling trailer hitch) from a display whose general safety is not challenged. When a person slips on a foreign substance on a floor, the very presence of that substance establishes that a dangerous condition existed prior to the fall. *Lanier* simply shifts the burden to the defendant to explain why it did not have adequate notice to remedy the dangerous situation (the foreign substance on the floor in slip and fall cases). Implicit in this calculus is the recognition that the condition was not only dangerous, but also was of the type that is at least potentially discoverable by the exercise of reasonable care – in the case of liquid substance on the floor, it is visible and discoverable to an employee looking for such a danger.

No. 3:06-CV-653-H, 2008 WL 2858883, at *3 (W.D. Ky. July 24, 2008); *see also Engler v. Davis*, No. 2005-CA-669-MR, 2005 WL 3249941, at *1 (Ky. App. Dec. 2, 2005) (distinguishing *Lanier* because "the question [in *Lanier*] is how long the substance had been on the floor").

Here, the crux of Mr. Rollins' accusations against Lowe's parallel entirely to the underpinnings of negligence in a slip-and-fall case as described in *Neville*: "a static and readily identifiable dangerous condition" that should have been remedied and was "of the type that is at least potentially discoverable[.]" 2008 WL 2858883, at *3. In Mr. Rollins' Complaint, he alleges that Lowe's "permitted a dangerous condition to exist" by allowing the screw to remain on the shelf, and that the store "knew or should have known of the hazard but took no steps to warn about or remedy it." (Doc. # 1-1 ¶¶ 5-6). In other words,

7

the screw on the shelf is sufficiently analogous to a slippery substance on the floor to align with the *Lanier* framework, and the Court will thus apply it.

Finally, before moving to analyze the facts, the Court notes that the *Lanier* framework must still be reconciled with the federal summary judgment standard by which the Court is bound. When a defendant's motion for summary judgment is decided under a burden shifting framework, summary judgment can be achieved "in one of two ways – either by arguing that the plaintiff has failed to come forward with evidence establishing an essential element of the plaintiff's [burden], or by arguing that . . . no reasonable jury could return a verdict for the plaintiff." *Hollis v. Chestnut Bend Homeowners Ass'n*, 760 F.3d 531, 543 (6th Cir. 2014) (internal citations omitted).

While the plaintiff must also carry his own burden as prescribed by the framework, a plaintiff need not fully prove his case on the merits at this stage. Rather, Mr. Rollins must merely "present evidence" that each of the *Lanier* elements are met to survive summary judgment and shift the burden to Lowe's at the trial stage. *Cornelison*, 2023 WL 1452051, at *2; *see also Hollis*, 760 F.3d at 543 (remarking that a defendant can win summary judgment by showing that the plaintiff has "failed to come forward with," or present, evidence in support of his case). The requirement that Rollins must merely "present evidence" is furthermore not only aligned with the federal summary judgment standard, which requires that the Court draw all reasonable inferences in favor of the non-moving party, *Matsushita*, 475 U.S. at 587, but also comports with federal case law applying other burden shifting frameworks on summary judgment. More specifically, in cases involving employment discrimination, a plaintiff initially carries the burden of establishing a prima facie case, but the plaintiff's burden "is 'not onerous' and 'poses a

8

burden easily met,' as [the prima facie] stage is 'meant simply to force a defendant to proceed with its case.'" *Meyrose v. Vitas Hospice Servs., LLC*, No. 2:19-CV-91-DLB-CJS, 2021 WL 5139478, at *3 (E.D. Ky. Nov. 3, 2021) (quoting *Provenzano v. LCI Holdings, Inc.*, 663 F.3d 806, 812 (6th Cir. 2011)). Because the *Lanier* framework essentially requires a plaintiff to make a prima facie case,[1] the same "not onerous" burden applies here. *Id.*; *see also Nelson v. Costco Wholesale Corp.*, No. 3:18-CV-278-BJB-RSE, 2021 WL 2459472, at *14 (W.D. Ky. June 16, 2021) (applying *Lanier* framework and noting that "[a]t the summary judgment stage, evidence 'must be produced'" by a plaintiff to proceed (quoting *Cochins v. Linden-Alimak, Inc.*, 799 F.2d 1128, 1134 (6th Cir. 1986)).

Even though that burden seems low, the Court acknowledges that Kentucky premises liability law exhibits a strong policy preference for jury trials. In *Greer v. Kaminkow*, this court noted that Kentucky's recent approach to premises liability cases "aims to advance a determined effort to limit holdings that a premises hazard is not unreasonable as a matter of law to those rare instances of where they are justified." 401 F. Supp. 3d 762, 770 (E.D. Ky. 2019) (internal quotations omitted). In other words, the Kentucky Supreme Court's "intention [is] to return most . . . cases to jury consideration." *Grubb v. Smith*, 523 S.W.3d 409, 418 (Ky. 2017). With the legal framework and

---

[1] Kentucky courts have described the *Lanier* framework as a "prima facie burden" in multiple cases. *E.g.*, *DeArmon v. Wal-Mart Stores, Inc.*, No. 2005-CA-2560-MR, 2006 WL 3759699, at *1 (Ky. App. Dec. 22, 2006); *Haney v. Winn-Dixie Midwest, Inc.*, No. 1999-CA-531-MR, 2004 WL 360886, at *2 (Ky. App. Feb. 27, 2004); *Glass v. Morehead State Univ.*, No. 2008-CA-1018-MR, 2009 WL 2192739, at *3 (Ky. App. July 24, 2009); *see also Denney v. Steak N Shake Operations, Inc.*, 559 F. App'x 485, 487-88 (6th Cir. 2014) (applying Kentucky law and making the same reference).

underlying policy considerations in mind, the Court has evaluated Defendant's Motion for Summary Judgment and has determined that it must be denied for the foregoing reasons.

### 3. Unreasonably Dangerous Condition

First, Lowe's argues that the screw's condition on the shelf was not unreasonably dangerous, which could speak to the first and third *Lanier* prongs, or which could be seen as a threshold determination necessary "[t]o even trigger *Lanier*." *Littleton*, 2021 WL 4058004, at *3. Either way, summary judgment is inappropriate because material factual issues exist, and a jury could reasonably find in either party's favor. More specifically, material factual issues exist with respect to the state and positioning of the screw when Mr. Rollins encountered it, in addition to the type of screw that injured him. According to Lowe's, the loose screw was merely "present on a retail shelf," and is thus not an unreasonably dangerous condition as a matter of law, undermining Plaintiff's ability to establish the first and third prongs of the *Lanier* framework. (Doc. # 28-1 at 8). However, Mr. Rollins states that the screw was protruding from the shelf when he encountered it, in addition to there being "a spill of sharp screws on [the] floor." (Doc. # 32 at 1). If the screw was sharp and protruding from the shelf, let alone there being more screws on the floor, a reasonable jury could conclude that an unreasonably dangerous condition existed—and furthermore, most fatal to Lowe's argument here is that no uncontested evidence exists to establish the screw's position on the shelf as a matter of law.

To the extent that Lowe's suggests that the seemingly flat position of the screw is conclusively determined by a photograph taken by Mr. Rollins on the day after the accident, the Court notes that at summary judgment, the Court cannot evaluate the veracity of the evidence. Instead, the Court merely notes the sufficiency of the evidence

10

and the extent to which contradictory evidence exists. *Anderson*, 477 U.S. at 249. And here, contradictory evidence certainly exists. While Mr. Rollins provided the photograph, Mr. Rollins also testified that the screw was "sticking out" (Doc. # 32-1 at 18, 76), and "pointing out." (*Id.* at 59). Even though all the cited evidence was provided by Mr. Rollins, the Court cannot say which evidence is more credible, as credibility determinations must be left to the jury. *Alspaugh v. McConnell*, 643 F.3d 162, 168 (6th Cir. 2011) (quoting *Schreiber v. Moe*, 596 F.3d 323, 333 (6th Cir. 2010)).

In further support of its first argument, Lowe's has cited many Kentucky cases which deal with the open-and-obvious doctrine, although Lowe's does not outright state that it is mounting an open-and-obvious defense. (*See* Doc. # 28-1 at 8 (citing *Grubb v. Smith*, 523 S.W.3d 409 (Ky. 2017) and *Shelton v. Ky. Easter Seals Soc., Inc.*, 413 S.W.3d 901 (Ky. 2013)); *but see also* Doc. # 36 at 9 ("The open and obvious nature of the screw shows it was not an unreasonably dangerous condition.")). Nonetheless, Lowe's' position that the screw was not unreasonably dangerous overlaps with its implicit assertion that the screw was open and obvious, as the two are essentially the same—because the basis of the open-and-obvious doctrine is that "'obvious' risks could not be deemed unreasonable because the invitee could be expected to protect him or herself from them." *Grubb*, 523 S.W.3d at 417.

However, an open-and-obvious defense only "supports summary judgment if 'the obviousness of danger is compelling, so that the court might take the case from the jury[,]" and summary judgment is only appropriate "[i]f reasonable minds cannot differ' about the evidence[.]" Nelson, 2021 WL 2459472, at *15 (quoting *Shelton*, 413 S.W.3d at 916); *see also Dunn v. Wal-Mart Stores East, L.P.*, 724 F. App'x 369, 374 (6th Cir. 2018) ("[T]he

11

Kentucky Supreme Court has repeatedly and explicitly declared that under comparative fault, the unreasonableness and foreseeability of the risk of harm is normally a question for a jury . . . in all but the rarest of circumstances."). But again, the Court cannot state affirmatively whether the screw was open and obvious in the face of contradicting evidence as to the screw's position on the shelf, and thus, reasonable minds *can* differ about the evidence. In other words, this record does not present "the rarest of circumstances" necessary for granting summary judgment, and Lowe's argument is accordingly unavailing. *Dunn*, 724 F. App'x at 374.

Lastly, the Court notes that the supposedly analogous cases cited by Lowe's are distinguishable. In *Eugene v. Wal-Mart Stores, Inc.*, the plaintiff believed he cut his hand on a shelving rack inside a Wal-Mart but could produce no evidence, direct or circumstantial, that the shelving rack actually caused his injury and that it was negligently maintained. 570 So.2d 216, 220 (La. App. 1990). In fact, in direct contradiction to the facts on this record, the *Eugene* court noted that "There was no testimony the rack presented a hazardous condition; however, there was uncontroverted testimony [that] 'the rack was in good condition' with '*no sharp objects or anything protruding from the rack*.'" *Id.* (emphasis added). Here, as previously explained, controverted testimony exists that the screw (a sharp object) may have been protruding from the rack at Lowe's. Similarly, in *Levin v. Lowe's Home Centers., LLC*, the plaintiff was unsure about how he came to be injured and did not provide any evidence that an unreasonably dangerous condition existed. No. 1:16-CV-110-LG-RHW, 2017 WL 278480, at *2. Here, as previously explained, the mechanism of Mr. Rollins' injury is not disputed, and a reasonable jury

could ostensibly find that a sharp screw protruding from a retail shelf constituted an unreasonably dangerous condition.

For these reasons, Lowe's' first argument regarding the lack of an objectively unreasonable condition does not support the granting of summary judgment. Likewise, because material questions of fact exist as to whether the screw's condition was unreasonably dangerous, the Court can conclude that Mr. Rollins has met his burden of production as to the first and third prongs of the *Lanier* framework: whether he had an encounter with a dangerous condition in the store, and whether the premises were in a reasonably safe condition. The Court thus turns to the remaining second *Lanier* prong, which addresses causation.

### 4. *Causation*

Causation under the *Lanier* framework is addressed in the second prong, which requires a plaintiff to show that "[t]he encounter was a substantial factor in causing the accident and the customer's injuries[.]" 99 S.W.3d at 435-36. Lowe's has argued that Mr. Rollins himself, not its purported negligence, caused Mr. Rollins' accident and injuries. (Doc. # 28-1 at 13). According to Lowe's, uncontroverted evidence shows that Mr. Rollins chose to go to the store without his cane, even though he is required to use a cane by his doctor, and that Mr. Rollins' "interactions with the heavy flooring product, after he placed his cane in his cart, [] set the incident in motion and is the substantial factor causing [his] injuries." (*Id*. at 14). Lowe's thus posits that "[t]he only reasonable conclusion that can be drawn from [Mr. Rollins'] description of the events is that his own actions, without any negligence on the part of Lowe's, were the legal cause of his injury." (*Id.*).

13

Unfortunately for Lowe's, the Court cannot use that argument to grant summary judgment because the argument is based on comparative negligence, even if Lowe's does not label it as such. Instead, Lowe's appears to argue that Mr. Rollins' own behavior is a superseding cause, but Kentucky law is clear that "a superseding cause is an act of a *third person or other force* by which its intervention prevents the actor from being liable for harm to another," and that "the intervening act or event must be of independent origin, unassociated with the original act." *Pile v. City of Brandenburg*, 215 S.W.3d 36, 42 (Ky. 2006) (emphasis added) (internal citations omitted). The plaintiff himself is neither unassociated with the original act nor a third party or other force, and thus cannot be a superseding cause. *See Brantley v. Asher*, No. 08-CV-64-KSF, 2009 WL 126865, at *3 (E.D. Ky. Jan. 16, 2009) (stating that the plaintiff's own actions cannot be a superseding cause).

Instead, when a lack-of-causation argument is made based upon the plaintiff's own behavior, that argument is comparative negligence. *See id*.; *see also Commonwealth v. Babbitt*, 172 S.W.3d 786, 793 (Ky. 2005) ("The rationale for the doctrine of superseding cause has been substantially diminished by the adoption of comparative negligence."). In Kentucky, "[u]nder the comparative-fault regime, the fact finder is tasked with apportioning fault," not the Court. *Grubb*, 523 S.W.3d at 415; *see also Hilen v. Hays*, 673 S.W.2d 713, 720 (Ky. 1984) ("The *trier of fact* must" apportion fault in a comparative negligence case. (emphasis added)). As this court has previously held, the "rare case where comparative fault is not submitted to the jury" is one that involves "the plaintiff's active creation of a risk that would not have otherwise existed but for his deliberate act." *Carlotta v. Warner*, 601 F. Supp. 749, 755 (E.D. Ky. 1985). The allegedly negligent risk

14

on this record—the screw on Lowe's shelf—would have been there whether Mr. Rollins fell or not, irrespective of what caused him to fall, and Lowe's comparative fault argument thus must be submitted to a jury for resolution.

Furthermore, even if the Court did construe Lowe's argument as one based in legal causation or as a superseding cause, and not based in comparative fault, summary judgment would be improper because material facts are in dispute. Lowe's is correct that "Legal causation presents a question of law when 'there is no dispute about the essential facts and [only] one conclusion may reasonably be drawn from the evidence.'" (Doc. # 28-1 at 13 (quoting *McCoy v. Carter*, 323 S.W.2d 210, 215 (Ky. 1959)). But here, essential facts are in dispute, and more than one conclusion may be reasonably drawn from the evidence. Lowe's states that Mr. Rollins was under doctor's orders to use his cane (Doc. # 36 at 11), and Mr. Rollins states that he was not under any such orders. (Doc. # 32 at 9). Lowe's suggests that Mr. Rollins lifted the flooring box when he was not physically able to do so, which caused him to lose his balance. (Doc. # 28-1 at 14). Mr. Rollins testified that he was in "total control" of his body on that day. (Doc. # 32 at 9). Reading these facts as undisputed would require the Court to make inferences in Lowe's favor, which the Court cannot do, as Lowe's is the moving party. *Matsushita,* 475 U.S. at 587.

Finally, to address Mr. Rollins' burden of production under *Lanier*, the Court concludes that he has produced sufficient evidence to show that "[t]he encounter was a substantial factor in causing the accident and [his] injuries." *Martin*, 113 S.W.3d at 98. As previously stated, Mr. Rollins has testified that he was in "total control" of his body on that day, and the mechanism of his injury is not disputed – the screw on the shelf pierced

15

his hand – and the "encounter" for *Lanier* purposes is Mr. Rollins falling into the screw, which was left on the shelf. (Doc. # 32 at 9). As Lowe's explained in its Motion, a "substantial factor" under Kentucky law is a factor that would "lead reasonable men to regard it as a cause, using that word in the popular sense, in which there always lurks the idea of responsibility, rather than in the so called 'philosophical sense,' which includes every one of the great number of events without which any happening would not have occurred." *Pathways*, 113 S.W.3d at 91-92 (quoting Rest. 2d of Torts § 431 cmt. A). Taking Mr. Rollins' allegations in the "popular sense," in combination with the plaintiff's low burden of production at this stage, the Court determines that a reasonable juror could find that Lowe's purported negligence was a substantial factor in causing Mr. Rollins' injuries. Mr. Rollins has accordingly carried his burden under the *Lanier* framework, and the case must be submitted to a jury to determine whether Lowe's was negligent on this record.

### B.  Motion to Limit the Testimony of Dr. Slaughter (Doc. # 35) and Motion to Exclude the Testimony of Dr. Nicoson (Doc. # 46)

In addition to its Motion for Summary Judgment, Lowe's has moved to limit or exclude the testimony of two of Mr. Rollins' expert witnesses (Docs. # 35 and 46). However, the testimony of these witnesses was not relied upon in the parties' briefing on summary judgment. Therefore, the Court will deny these motions without prejudice with the right to refile them if the case proceeds to trial.

### IV.  CONCLUSION

The Court recognizes that cases in which the facts seem simple are cases which usually lend themselves to summary judgment in federal court. But even simple facts can

be disputed facts, and this record is disputed at multiple points which are outcome determinative, meaning those disputes are material. *Bruederle*, 687 F.3d at 776.

Accordingly, **IT IS ORDERED** that:

(1)  Lowe's' Motion for Summary Judgment (Doc. # 28) is **DENIED**;

(2)  Lowe's' Motion to Limit (Doc. # 35) is **DENIED WITHOUT PREJUDICE**;

   (a)  The previously filed Motion to Limit (Doc. # 33), for which Doc. # 35 is marked as a duplicate filing, is **DENIED AS MOOT;**

(3)  Lowe's' Motion to Exclude (Doc. # 46) is **DENIED WITHOUT PREJUDICE**; and

(4)  The parties are **DIRECTED** to file a **Joint Status Report** within twenty-one (21) days of the date of entry of this order advising the Court on the possibility of settlement, and if necessary, dates of availability for trial in August and September 2023 and the anticipated length of trial.

This 27th day of February, 2023.



Signed By:
*David L. Bunning*   DB
United States District Judge